JOLLIFF ET AL., APPELLANTS, *v.* HARDIN CABLE TELEVISION CO. ET AL., APPELLEES.

[Cite as Jolliff v. Hardin Cable Television Co. (1970), 22 Ohio App. 2d 49.]

(No. 502—Decided April 15, 1970.)

*Mr. Carter W. Schwemer* and *Mr. Charles Van Dyne,* for appellants.

*Mr. C. A. Faulkner* and *Messrs. Kaylor & McKinley,* for appellees.

GUERNSEY, J. During 1940 and 1941 the predecessors in title to lands in Hardin County now owned by the respective plaintiffs conveyed by four separate deeds of easement to the Ohio Power Company, hereinafter referred to as Ohio Power, certain rights of way over such lands. The operative clauses of each of the deeds of easement, to the extent pertinent to this decision, read as follows:

" * * * said party of the first part hereby grants, bargains, sells, conveys and warrants to the party of the second part, *its successors and assigns* forever, a right of way and easement with the right, privilege and authority to said party of the second part, *its successors, assigns, lessees, and tenants* to construct, erect, operate and maintain a line of poles and wires for the purpose of *transmitting electric or other power,* including telegraph or telephone wires in, on, along, over, through or across the following described lands * * * .

"TOGETHER with the right to said party of the second part, *its successors and assigns,* to place, erect, maintain,

inspect, add to the number of, and relocate at will, poles, crossarms or fixtures, and string wires and cables, adding thereto from time to time, across, through or over the above described premises, * * * ." (Emphasis added.)

Ohio Power thereafter erected poles and power lines on such rights of way.

In 1965 and 1966 the Hardin Cable Television Company, hereinafter referred as Cable TV, acting solely pursuant to a document dated October 1, 1965, and entitled and containing an "Agreement for the Joint Use of Poles between Ohio Power Company and Hardin Cable Television Company," and without other consent of the plaintiffs, entered twice upon the lands of the plaintiffs, first, to install on the poles of Ohio Power certain hardware and wire cable to be used for the support of a coaxial television cable and, second, to hang the coaxial cable from the support cable.

On March 15, 1966, the plaintiffs filed their action in the Common Pleas Court of Hardin County against Ohio Power and Cable TV seeking a mandatory injunction against Cable TV requiring it to remove its installation, a permanent injunction against Cable TV to bar any further entry on their lands for any similar installation on Ohio Power poles, and a permanent injunction against Ohio Power restraining it from permitting Cable TV, or anyone else, from using its poles on plaintiffs' lands for cable television purposes.

On November 25, 1968, Ohio Power executed a document purporting to sub-lease and assign to Cable TV "so much of its rights of way and easements" on plaintiffs' properties "to construct, erect, operate and maintain a line of wires and pole attachments for the purpose of transmitting electric and other power in, on, along, over, through and across" plaintiffs' lands, the uses under the agreement to be in accordance with the joint use agreement of October 1, 1965.

On the issues joined, the trial court found the "low use of easements over and across suburban properties of plaintiffs, a restrictive impediment to the enjoyment and

normal development whereof [*sic*], not countenanced by or within the reasonable intendment of the original grants; hence decreed cable be substantially raised, else removed. Mandatory injunction accordingly." From that decree the plaintiffs appealed to this court on questions of law and fact.

In the view we take of this case, although the parties have given much attention in their briefs thereto, we do not consider it necessary to, and do not, determine whether the transmission of a television signal by means of a co-axial television cable constitutes "transmitting electric or other power" within the contemplation of the purpose clause of the deeds of easement. In our view, the only issue involved is whether any rights which Ohio Power had under these deeds of easement were assignable to Cable TV.

Although Judge Brinkerhoff said in his opinion in *Junction Rd. Co.* v. *Ruggles,* 7 Ohio St. 1, 7, that a right of way for a railroad is *sui generis,* must be governed by reasons peculiar to itself, and is not subject to principles long established in regard to rights of way personal or in gross and rights of way appurtenant to real estate, it is apparent that he made that distinction primarily for the purpose of finding, in that case, that a railroad right of way was assignable. The law at that time was that easements or rights of way in gross were not assignable or inheritable by any words in the deed by which they were granted. *Boatman* v. *Lasley,* 23 Ohio St. 614. It is now well settled in Ohio, and the general rule elsewhere, that a right of way or easement of the private commercial character herein involved is an easement in gross constituting an alienable property interest. 5 Restatement of the Law, Property, 3040, Section 489; *Garlick* v. *Pittsburgh & Western Ry. Co.,* 67 Ohio St. 223; *Geffine* v. *Thompson,* 76 Ohio App. 64; 22 Michigan Law Review 521, Professor Lewis M. Simes, "The Assignability of Easements in Gross in American Law."

However, the authorities as to the alienability of a commercial easement in gross relate primarily to the alien-

ability of the entire easement or right of way to one person or entity, or to several persons or entities as tenants in common or in similar legal relationship, where the burden on the servient tenement is not increased as a result of the assignment. There is little, if any, authority in Ohio on the apportionability of commercial easements in gross, *i. e.*, in so dividing it as to produce independent uses or operations. We recognize that the second paragraph of the syllabus of the case of *Garlick* v. *Pittsburgh & Western Ry. Co.*, 67 Ohio St. 224, recognizes the right of a railway corporation to sell to another corporation for like railroad purposes all, *or a part,* of the right of way which it acquired by grant or appropriation, but the facts of that case do not support the conclusion as to the sale of a part nor do they reflect conveyance of a part or an increased burden on the servient estate.

In the cited article by Professor Lewis M. Simes in the Michigan Law Review, *supra,* it is recognized that much of the argument presented against alienability of easements in gross, such as that which appears in *Boatman* v. *Lasley,* 23 Ohio St 614, is that assignability may result in an unlawful surcharge on the servient estate. In answer to such argument, Professor Simes states, at page 527:

" * * * But there are other means of preventing surcharge than denying title to a grantee. The owner of the servient may bring an action for damages or secure an injunction in a proper case. That would seem to be sufficient protection."

Professor Simes does not, however, answer the question of when an injunction will lie to prevent surcharge.

Obviously, when a right of way or easement in gross is created by a written instrument conveying to a person, corporation, or other legal entity, *and to successors and assigns,* with right, privilege and authority to the grantee, *its successors, assigns, lessees, and tenants* to use same, it is at least contemplated that the right of way or easement may be thus alienated in its entirety and as a unit. However, the issue whether by the use of such words apportionability may

also exist can be determined only by further construing the intent of the parties from all the provisions of the instrument of conveyance.

In relatively recent years rules of construction with regard to the determination of such intent have begun to emerge. In 2 American Law of Real Property 296, Section 8.84, it is stated:

" * * * In the case of an easement appurtenant the dominant tenement can be divided, with the result that the benefit of the easement goes to each part. But the needs of the whole of the dominant tenement constitute the measure of the liability of the servient tenement. There is no such limitation upon easements in gross. In them the amount of use of the servient tenement is measured only by the amount of use the owner of an easement is able to make. Were he able to divide his use among several persons so that each should be able to make an independent use of a separately used distinct part of the servient tenement, the burden upon that tenement might be greatly increased. *It will not be assumed in the absence of an affirmative showing that it was intended to be permitted, that it was so intended.*" (Emphasis added.)

For that emphasized conclusion the quoted source cites 5 Restatement of the Law, Property, 3052, 3053, Section 493, comments a. and d. See, also, 2 American Law of Real Property 297, Sections 8.85 and 8.86, and authorities therein cited.

The only case which we have been able to find approaching the fact situation of this case is not of this jurisdiction but, on its facts, differs only in that the landowner there sought to recover compensation for, rather than enjoin, an additional burden placed on his land by a municipality in attaching wires and appurtenances to a power company's poles under authorization of the power company which, together with its successors and assigns, had originally been granted an easement to maintain poles and lines on the plaintiff's land. In that case, *Grimes* v. *Virginia Electric & Power Co.*, 245 N. C. 583, 96 S. E. 2d 713, the Supreme Court of North Carolina, in holding that the

plaintiff was entitled to just compensation for the additional burden, said:

" * * * The contract between the defendants permits the power company to retain all its facilities and, in addition, permits the city of Washington to transmit its own current by means of its own wires attached to the power company's poles. The plaintiff was not a party to the contract between the defendants. The additional lines of the city, with the right to enter upon the lands for maintenance purposes, place an additional burden on plaintiff's land without his consent. Two power companies enjoy an easement over his land. He granted only one."

In the final analysis, the issue of apportionability of an easement in gross depends upon whether the easement (or right of way) originally conveyed is exclusive or non-exclusive, so that the particular uses authorized are, or are not, in competition with rights of use which the owner of the servient tenement retains for himself or for other of his assignees. The rationale and rules in this respect are aptly expressed in comments c. and d. of 5 Restatement of the Law, Property, 3052, 3053, 3054, 3055, Section 493, as follows:

"*c. Exclusive easements in gross.* An exclusive easement in gross is one which gives the owner the sole privilege of making the uses authorized by it. Neither the owner of the servient tenement nor any other person except the owner of the easement is entitled to make such a use. In the case of such an easement there can be no competition by its owner with others in making the particular use authorized by it. The only person who has an interest in that use is the owner of the easement. Still, an increase in the use authorized by such an exclusive easement may be seriously disadvantageous to the possessor of the servient tenement in respect to other uses he is entitled to make as such possessor. He is affected in some degree by any increase in the use authorized by the easement. He is entitled, therefore, to prohibit any use made under it in excess of that authorized by the manner or terms of its creation.

"Though apportionability may be to the disadvantage of the possessor of the servient tenement, the fact that he is excluded from making the use authorized by the easement, plus the fact that apportionability increases the value of the easement to its owner, tends to the inference in the usual case that the easement was intended in its creation to be apportionable. This inference is very strong in cases where an increase in use is in fact advantageous to the possessor of the servient tenement. *** .

"*d. Nonexclusive easements in gross.* A nonexclusive easement in gross is one which does not give, as against the owner of the servient tenement and others who may be privileged under him, the sole privilege of making the use authorized by the easement. In the case of such an easement the owner and possessor of the servient tenement has not only the privilege himself to make the use authorized by the easement, but he retains the power to create like privileges in others. The apportionability of the easement by its owner would be inconsistent with such a power in the owner and possessor of the servient tenement. Because of this, the apportionability of the easement will not be assumed in the absence of a clear indication to the contrary in the manner or terms of its creation. "* * * ."

The deeds of easement here involved did not purport to convey, nor did they convey, to Ohio Power an exclusive right to use the servient tenement for electric or other power right-of-way purposes. Consistently with the terms of such deeds of easement, the owners of the servient tenements retained the privilege and right to use the balance of the servient tenements for similar purposes or to convey similar easements or rights of way to others. For Ohio Power to apportion its rights of way by assigning (or leasing) to Cable TV the right to share the use of its poles, while retaining to itself the full use of its rights of way, constituted competition with the owners for the sale of easement rights not contemplated by the deeds of easement. Ohio Power's easements not being apportionable,

the assignment (or lease) herein to Cable TV was not authorized, and the sharing of the rights of way and easements pursuant thereto constituted an unlawful surcharge on the servient tenements.

The cases of *Friedman Transfer & Construction Co. v. Youngstown,* 176 Ohio St. 209, and *Ziegler* v. *Ohio Water Svc. Co.,* 18 Ohio St. 2d 101, primarily relied upon by the appellees, are readily distinguishable for, among other reasons, they involve the use of public ways and not the use of private commercial rights of way and easements.

Approving and following the rules set forth in the Restatement of the Law of Property, hereinbefore quoted, we conclude, on the issues joined, that the plaintiffs are entitled to the injunctions prayed for in their petition.

*Decree accordingly.*

COLE, P. J., and YOUNGER, J., concur.